IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 04-cv-01799-MSK-OES

ARTHUR J. ROBINSON,

      Plaintiff,

v.

BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO,

      Defendant.

---

## OPINION AND ORDER GRANTING, IN PART, MOTION TO DISMISS AND GRANTING, IN PART, MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion to Dismiss Plaintiff's Second Through Ninth Claims for Relief (**# 37**), the Plaintiff's response (**# 39**), and the Defendant's reply (**# 43**); and the Defendant's Motion for Summary Judgment (**# 67**), the Plaintiff's response (**# 73**), and the Defendant's reply (**# 77**).

## PROCEDURAL BACKGROUND

According to the Amended Complaint (**# 33**), in 1996, the Plaintiff, Mr. Robinson, a black male, was employed by the Defendant, through the University of Colorado at Denver, and was responsible for managing several labs and classroom facilities.  In the Fall of 1996, Mr.

1

Robinson was asked to complete a "Position Description Questionnaire" ("the PDQ"), to ensure that his job was properly classified.  Although Mr. Robinson submitted the PDQ to his supervisor, Mark Gelernter, Mr. Gelernter did not forward Mr. Robinson's PDQ on to the Human Resources Department, allegedly in violation of state personnel regulations.  Mr. Robinson further alleges that Mr. Gelernter did forward PDQ's prepared by white employees. Shortly after Mr. Robinson complained to Human Resources of Mr. Gelernter's refusal to forward the PDQ, Mr. Gelernter revoked many of the Mr. Robinson's job responsibilities by forwarding a PDQ to Human Resources that stated that Mr. Robinson's sole duty was serving as a computer lab technician.  In response, Mr. Robinson filed a complaint with the State Personnel Board and the Equal Employment Opportunity Commission ("EEOC").

In 1999, the State Personnel Board investigated Mr. Robinson's complaint, and the Board's investigator, Joe Cooper, informed Mr. Robinson that the investigation revealed that white employees had been performing similar tasks, yet were paid more and classified in higher positions.  Mr. Robinson attempted to obtain a copy of Mr. Cooper's findings, but the Board has not been able to locate a copy of Mr. Cooper's report, and Mr. Cooper has since retired.

Mr. Robinson's Amended Complaint alleges nine causes of action: (i) a claim of race discrimination pursuant to Title VII, in that white employees enjoyed prompt submissions of their PDQs and were paid higher salaries than Mr. Robinson for similar work; (ii) race discrimination in violation of C.R.S. § 24-34-402 for similar reasons; (iii) retaliation, apparently

2

in violation of Title VII, based on Mr. Robinson's filing of charges with the EEOC; (iv) violation

of 42 U.S.C. § 1981, in that Mr. Robinson's duties were reduced in retaliation for complaining

about Mr. Gelernter's failure to submit the PDQ; (v) violation of 42 U.S.C. § 1983, apparently

based on the unequal treatment afforded Mr. Robinson compared to white employees; (vi) a

claim pursuant to the Equal Protection clause of the 14th Amendment of the U.S. Constitution;

(vii) violation of the Equal Protection clause of Article II, section 25 of the Colorado

Constitution; (viii) race discrimination in violation of Title VI of the Civil Rights Act, 42 U.S.C. §

2000d; and (ix) a claim under Colorado's State Personnel Systems Act, C.R.S. § 24-50-101 *et seq.*

The Defendant filed the instant Motion to Dismiss **(# 37)**, seeking dismissal of Mr.

Robinson's Second through Ninth Claims for Relief.  The Defendant contends that: (i) the claims

under Colorado law and the § 1981 and § 1983 claims are barred by Eleventh Amendment

immunity; (ii) the retaliation, 14th Amendment, and Title VI claims fail to state a claim under

Fed. R. Civ. P. 12(b)(6); and (iii) Mr. Robinson's Title VII discrimination claim should be limited

to events occurring no more than 300 days before his filing of an EEOC charge in 2004.

The Defendant subsequently filed the instant Motion for Summary Judgment **(# 67)**.  As

relevant herein, it is undisputed that from the beginning of his employment until the events at

issue, Mr. Robinson was employed by the University at the College of Architecture, a

"classified" position under the State Personnel System.  However, in May 2004, Mr. Robinson

was transferred from the College of Architecture to the Department of Computing, Information,

and Network Services ("CINS").  The parties are in dispute as to whether this transfer altered

Mr. Robinson's job duties, and the parties also dispute the extent to which his position in the

College of Architecture was filled by a white employee.

In the Motion for Summary Judgment, the Defendant alleges that: (i) Mr. Robinson failed

to exhaust his administrative remedies with regard to his retaliation claim; (ii) Mr. Robinson's

Title VII discrimination claim was not the subject of a timely EEOC charge; (iii) the § 1981 and §

1983 claims are untimely; (iv) that Mr. Robinson cannot establish a *prima facie* case in support

of his discrimination and Equal Protection claims because he cannot establish the existence of a

promotional opportunity available to him, cannot establish the existence of any similarly-situated

white employee allegedly paid more, and cannot establish that his transfer to CINS was an

adverse employment action; (iv) that Mr. Robinson cannot establish the elements of a Title VI

claim; and (v) that Mr. Robinson cannot establish the elements of a claim under the State

Personnel Systems Act.  In response (# 73) to this motion, Mr. Robinson voluntarily dismissed

his Title VI claim.

## JURISDICTION

With regard to Mr. Robinson's claims under federal law, the Court exercises subject-

matter jurisdiction pursuant to 28 U.S.C. § 1331and § 1343.  The Court exercises supplemental

jurisdiction over Mr. Robinson's state-law claims pursuant to 28 U.S.C. § 1367.

## ANALYSIS

### A.  Standard of review

#### 1.     Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).  The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

#### 2.     Motion for Summary Judgment

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattret*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F. 3d 567, 569 (10th Cir. 1994); *see also In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F. Supp.2d 1106 (D. Colo. 2002). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv SAP, Inc.*, 210 F. 3d 1132 (10th Cir. 2000); *Carry v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).   A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l General Ins. Co.*, 817 F. 2d 83, 85 (10th Cir. 1987); *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Grayson v. American Airlines, Inc.*, 803 F. 2d 1097, 1101 (10th Cir. 1986).

The analysis to be applied differs depending on whether the moving party is also the party with the burden of proof at trial.  If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(e).  Once the moving party has met its burden, the responding

party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward,* 199 F.3d 1126, 1131 (10th Cir. 1999). However, where, as here, the non-movant bears the burden of proof at trial, the non-movant must point to specific evidence establishing a genuine issue of material fact with regard to each challenged element. *Ribozyme*, 209 F.Supp.2d at 1111; *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).

### B.  Motion to Dismiss

#### 1.    Eleventh Amendment immunity

The Eleventh Amendment to the U.S. Constitution provides that the federal courts may not hear suits against state entities, absent a waiver of the state's immunity. *See e.g. Tennessee v. Lane*, 541 U.S. 509, 517 (2004). It is well-settled that the University of Colorado is considered a state entity capable of claiming Eleventh Amendment immunity. *See Sturdevant v. Paulsen,* 218 F.3d 1160, 1170 (10th Cir. 2000) ("the University of Colorado is an arm of the state"); *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989). Thus, the question presented is whether the University's Eleventh Amendment immunity has been waived by either Congress or the State of Colorado with regard to Mr. Robinson's state law and § 1981/1983 claims. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989).

With regard to federal statutes, the United States Congress can abrogate a state's Eleventh Amendment immunity. *Lane*, 541 U.S. at 517. To determine whether Congress has done so

with a particular statute, the Court must examine whether Congress unequivocally expressed its intent to do so, and whether Congress acted pursuant to a valid grant of constitutional authority *Id.* With regard to the § 1981 and § 1983 claims, extended analysis is not necessary: it is well-settled in the Tenth Circuit that Congress did not waive states' Eleventh Amendment immunity through either § 1981, *see e.g. La Farve v. Kansas ex. rel Stoval,* 6 Fed.Appx. 799, 804 (10th Cir. 2001) (unpublished), *citing Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir.1998), or § 1983, *Rozek*, 865 F.2d at 1158 ("Congress did <u>not</u> abrogate the states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983") (emphasis in original).

Similarly, Mr. Robinson has not shown that the State of Colorado waived its immunity from suit in federal courts on the § 1981/1983 claims or any of the state law claims. A state's waiver of its Eleventh Amendment immunity must be express and unequivocal. *V-1 Oil Co. v. Utah Dept. of Public Safety*, 131 F.3d 1415, 1421 (10th Cir. 2002). Mr. Robinson has not pointed to any particular statutory language that he contends embodies such a waiver. In any event, it is clear that Colorado's Governmental Immunity Act, C.R.S. § 24-10-104 *et seq.*, does not waive Eleventh Amendment immunity for claims under § 1981 and § 1983, *Greiss v. State of Colo.*, 841 F.2d 1042, 1044-45 (10th Cir. 1988), nor is the Court aware of any provision of Colorado law creating such a waiver with regard to Mr. Robinson's state law claims.

Accordingly, Mr. Robinson's Second, Fourth, Fifth, Seventh, and Ninth Causes of Action are dismissed for lack of jurisdiction pursuant to the Eleventh Amendment.

2.      Title VII retaliation and 14th Amendment claims

Next, the Defendant argues that Mr. Robinson's Title VII retaliation and 14th Amendment claims fail to state a claim under Rule 12(b)(6).

Turning first to the retaliation claim, a plaintiff asserting a claim under Title VII must, prior to commencing suit in court, present that claim in a charge before the EEOC or the appropriate state agency.  42 U.S.C. § 2000e-5(e)(1); *National R.R. Passenger Co. v. Morgan*, 536 U.S. 101, 109 (2002).  Because the charge is intended to give the employer notice of the claim and permit conciliation before litigation occurs, courts limit the scope of any Title VII claim to the matters raised in the EEOC charge and such matters that could reasonably be expected to arise therefrom.[1]  *See MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).  Thus, the question is whether the Amended Complaint alleges that Mr. Robinson filed a timely charge alleging retaliation, or whether the investigation of any charge could reasonably encompass his claimed retaliation.

The Court's consideration of this issue is complicated by two issues: the Amended Complaint does not clearly articulate the dates upon which the alleged retaliatory actions took place, and does not attach copies of Mr. Robinson's EEOC charges.  However, the Court is

---

[1]Pursuant to *Morgan*, the Tenth Circuit has effectively abrogated the "continuing violation" doctrine, which formerly permitted the court to consider acts subsequent to the filing of a charge that were "like or reasonably related" to the type of actions alleged in the charge, even though these subsequent actions were not part of either the original or any subsequent charge. *See Annett v. University of Kansas*, 371 F.3d 1233, 1238 (10th Cir. 2004).

9

required to interpret the Amended Complaint in the light most favorable to Mr. Robinson for purposes of the Motion to Dismiss.  It is sufficient for the Court to find that Mr. Robinson has alleged that he has "exhausted his administrative remedies with regard to his claims for . . . retaliation."  Because the Defendant has challenged the sufficiency of Mr. Robinson's exhaustion efforts in the Motion for Summary Judgment, and the Court will examine the underlying facts of that issue in more detail below.

With regard to Mr. Robinson's claim under the Fourteenth Amendment, the Court notes that claims alleging violation of the Fourteenth Amendment must be brought pursuant to 42 U.S.C. § 1983; the Amendment itself does not provide a direct cause of action. *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir.1992).  Accordingly, because Mr. Robinson's claim under § 1983 is dismissed on Eleventh Amendment immunity grounds, his separate claim of a violation of the Fourteenth Amendment must be dismissed for failure to state a claim.

3.  <u>Timeliness of the Title VII discrimination claim</u>

The Defendant's motion with respect to the timeliness of the Title VII discrimination claim is addressed more completely in the Motion for Summary Judgment.  Therefore, the Court will not separately evaluate it for purposes of the Motion to Dismiss.

**C.  Motion for Summary Judgment**

At this point, two claims from Mr. Robinson's Amended Complaint survive: the Title VII discrimination claim, and the Title VII retaliation claim.

1.     Exhaustion

First, the Defendant challenges the sufficiency of Mr. Robinson's exhaustion of the retaliation claim.  The Defendant contends that, notwithstanding the allegations in the Amended Complaint, Mr. Robinson filed only one charge with the EEOC, and that that charge, dated May 11, 2004, alleges only race discrimination, not retaliation.

In response, Mr. Robinson points the Court to several exhibits which he contends are EEOC charges, and which raise the issue of retaliation.  Docket # 73-2 is a letter from Mr. Robinson, addressed to the University and Dan O'Leary, apparently a Human Resources officer, dated August 15, 1998, and setting forth various complaints.  The bottom of the letter is marked "cc: EEOC & Urban League of Colo."  Docket # 73-3 is another letter from Mr. Robinson, dated October 7, 1998, addressed "To Whom It May Concern" and "cc: EEOC" (among others). Docket # 73-4 is an identical copy of Docket # 73-3, but dated 10 days later.  Handwritten notes in the margin read "Second Copy To: Anyone Whom Would Help Me."  Docket # 73-5 is a "Request for Commencement of Discrimination Investigation," filed by Mr. Robinson with the State Personnel Board on October 29, 1998.  Mr. Robinson has also produced two letters to him from the EEOC in 2001, confirming that Mr. Robinson had made an appointment with the EEOC, apparently for the purpose of filing a formal charge.  Mr. Robinson's submissions do not

11

explain whether these appointments were kept, nor, if they were, what occurred.  Docket # 73-7, a letter from Mr. Robinson to the EEOC dated October 10, 2001, suggests that he met with an intake officer, but his affidavit in opposition to the Motion for Summary Judgment **(# 75)** indicates that he was told "a formal charge would be prepared for my signature at a later date."

None of these documents is a formal EEOC charge.  Under 29 C.F.R. § 1601.12(a), the EEOC provides that a charge should contain several items of information, including the name, address, and telephone number of the employer; the number of employees employed by the employer; and a statement as to whether the charging party has commenced proceedings in any other state or local agency.  However, § 1601.12(b) provides that the EEOC may deem a charge sufficient based solely on the receipt of a written statement "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  Arguably, the EEOC could have considered any of Mr. Robinson's letters to be a charge of discrimination under § 1601.12(b).  However, there is no indication that they did.  For example, there is no indication that the EEOC served a copy of Mr. Robinson's "charge" on the University pursuant to 29 C.F.R. § 1601.14 or 42 U.S.C. § 2000e-5(b), or that it notified Mr. Robinson of its disposition of the charge pursuant to 29 C.F.R. § 1601.18-21.  To the contrary, it appears that the EEOC did not consider Mr. Robinson's various correspondence to constitute a charge, because it summoned Mr. Robinson to at least two appointments for purposes of preparing a charge, and on at least one occasion, informed him that a charge would be submitted to him for his signature.  Under

12

these circumstances, Mr. Robinson has failed to carry his burden of coming forward with facts to indicate that he timely filed a a written statement that the EEOC regarded as a charge alleging retaliation.

There are two formal charges in the record, but neither contain an allegation of retaliation. Docket # 67-23 includes a copy of a charge filed on May 12, 2004 with the EEOC.  In the area titled "discrimination based on," only the "race" box is checked; the "retaliation" box is not marked.  In the narrative section, Mr. Robinson states that "I have been denied the same terms of employment and salary as similarly-situated non-Black employees," and "I believe that I am being discrimination against because of my race, Black, in violation of Title VII."  Nothing in this charge indicates that Mr. Robinson was raising a claim of retaliation.  Docket # 73-9 is an August 9, 2004 charge filed with the Colorado Civil Rights Division. That charge alleges only discrimination based on race and color, and alleges that the most recent date of discrimination was July 1, 2004 (or, perhaps, June 22, 2004; the contents of the charge are internally inconsistent). The charge describes the alleged discrimination as "den[ying] me a promotion and wage increase, for which I am otherwise qualified, because of my race/color."  In the narrative portion, Mr. Robinson explains that on July 1, 2004, he "was transferred to a different department, which now places me in a position of having to reapply for a job similar to the one I had for years," and that he was replaced by a white male who received a promotion and enjoyed fewer job responsibilities.  Nowhere in the charge does Mr. Robinson allege retaliation.

Mr. Robinson argues that the Court should deem his May 2004 formal EEOC charge to "relate back" to his earlier correspondence with the EEOC, citing *Edelman v. Lynchburg College*, 535 U.S. 106 (2002).  In *Edelman*, the plaintiff had timely faxed an unverified letter to the EEOC, and later, after an EEOC interview, executed a formal charge of discrimination, but did so after the deadline for filing a charge had passed.  The Supreme Court held that the §1601.12(b) of the EEOC's regulations, which deemed a charge that was amended to cure technical defects, such as the lack of verification, could relate back to the date on which the EEOC received the original filing, was a permissible exercise of the EEOC's rulemaking authority.  However, Mr. Robinson's reliance on *Edelman* is misplaced, as the issue here is not <u>when</u> Mr. Robinson first asserted a retaliation claim before the EEOC, but <u>whether</u> he ever did.  Nothing in any of Mr. Robinson's correspondence with the EEOC alleges, even remotely, a belief by Mr. Robinson that the University's conduct was in retaliation for Mr. Robinson invoking rights under Title VII.[2] Similarly, when Mr. Robinson eventually filed a formal charge of discrimination, that charge did not allege retaliation.  Thus, even if the Court were to find under *Edelman* that his 2004 EEOC charge should be deemed filed as of 1998– a finding the Court does not necessarily make at this time– the Court nevertheless finds that Mr. Robinson <u>never</u> asserted a claim of retaliation at any

---

[2]Indeed, Mr. Robinson's correspondence suggests that Mr. Gelernter removed job duties removed from him in retaliation for Mr. Robinson's complaints to Human Resources regarding Mr. Gelernter's failure to comply with state personnel system rules.  Nothing indicates that Mr. Robinson ever claimed that he was retaliated against for exercising rights protected under Title VII.

point throughout the course of his dealings with the EEOC.[3]  Accordingly, he has failed to comply with the statutory exhaustion requirement with regard to the retaliation claim, and that claim must be dismissed.

2.   Timeliness

The remaining claim is Mr. Robinson's Title VII discrimination claim.  The Defendant argues that the Court should construe this claim solely in light of the 2004 charge, and thus deem the claim to be timely only as to actions occurring within 300 days of the filing of that charge.  It is well-settled that a claim under Title VII cannot be brought with respect to discrete acts of discrimination that occur more than 300 days prior to the filing of the charge.  *See e.g. Morgan*, 536 U.S. at 114 ("only those acts that occurred 300 days before February 27, 1995, the day that Morgan filed his charge, are actionable").

Mr. Robinson argues that the discrimination perpetrated against him constitutes a "continuing violation," and thus, his 2004 charge can encompass the entire span of the violation. The Supreme Court largely abrogated the continuing violation doctrine in *Morgan*, holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time

---

[3]Mr. Robinson does not argue in the alternative that his retaliation concerns were encompassed within the EEOC's investigation of his discrimination charge, and thus, the Court does not consider this alternative means of exhaustion.

period after the discrete discriminatory act occurred." 536 U.S. at 113; *see also Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) ("*Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted."). Thus, Mr. Robinson's discrimination claims, if they are based upon discrete acts, are timely only if they were the subject of an EEOC charge within 300 days of the act.

Mr. Robinson's Amended Complaint essentially alleges four forms of discrimination: (i) Mr. Gelernter's refusal to submit the PDQ; (ii) Mr. Gelernter's revocation of certain duties from Mr. Robinson, thereby allegedly mis-classifying him; (iii) classification of Mr. Robinson in such a way that similarly-situated white employees received higher pay; and (iv) transfer of Mr. Robinson out of the College of Architecture.[4]  The first and last of these acts are indisputably discrete, and thus, requires that a charge be filed within 300 days of the event.  Mr. Robinson did file a formal charge of discrimination with the Colorado Civil Rights Division with regard to the transfer, and thus, a discrimination claim based on this event is timely.  The parties have not clearly identified the time period over which Mr. Gelernter's failure to submit the PDQ occurred, but it is clear that, whatever the date Mr. Gelernter eventually did submit the PDQ, it was no

---

[4]The Court notes that no mention of this event is made in the Amended Complaint, but it is the subject of an EEOC charge.  For purposes of this motion, the Court will assume that the event is encompassed within the Mr. Robinson's general allegations of discrimination.

later than 1998.  Mr. Robinson did not file a formal charge of discrimination regarding Mr.

Gelernter's failure to submit the PDQ within 300 days of any point in 1998, and thus, a claim

based on this act is barred.

The remaining two claims– revocation of job duties and payment of a disparate salary–

arguably constitute persistent, rather than discrete, acts of discrimination, insofar as they have

continuing effects.  With regard to allegedly discriminatory salary disparities, the general trend in

the federal courts is to hold that each paycheck is a discrete act of discrimination, and thus, a

plaintiff can recover on a disparate pay claim only for paychecks received up to 300 days prior

to the filing of the charge, regardless of how long the disparate pay plan has been in place.  *See*

*e.g. Shea v. Rice*, 409 F.3d 448, 453-54 (D.C. Cir. 2005); *Forsyth v. Federation Employment and*

*Guidance Service*, 409 F.3d 565, 572-73 (2d Cir. 2005).  Thus, Mr. Robinson's claim of pay

disparity may encompass paychecks going back 300 days from his May 12, 2004 EEOC charge

in which he claimed disparate pay.

With regard to the revocation of job duties, the analysis is different.  The revocation of

Mr. Robinson's job duties is analytically analogous to a demotion.  Although they have

continuing consequences, demotions are considered discrete acts for which the prompt filing of a

charge is required.  *See e.g. Bauer v. Board of Supervisors*, 44 Fed.Appx. 194, 199 (9th Cir.

2002) (unpublished) ("Both Bauer's 1997 discipline and 1996 demotion fall squarely within the

category of discrete discriminatory acts discussed by the Court in *Morgan*").  Mr. Robinson was

17

thus obligated to file a charge of discrimination within 300 days of the revocation of his duties by Mr. Gelernter.  The record indicates that this occurred at some point in 1998 or 1999, and thus, a claim based on this event is also barred.

Mr. Robinson makes one final argument– that under *Edelman*, his 2004 charges should relate back to his 1998 correspondence with the EEOC.  This argument is misplaced.  The prior discussion finds that a claim based on two alleged discriminatory acts are barred: the failure to submit the PDQ and the demotion.  With regard to the PDQ, although the issue was the subject of much of Mr. Robinson's correspondence with the EEOC, the issue was never incorporated into either of the two formal charges.  Mr. Robinson essentially argues that the Court should not only deem the formal charges to be filed on the date of his initial correspondence with the EEOC, but that the Court should also deem those charges to incorporate the contents of his prior correspondence.  *Edelman* does not stand for this later proposition, and the Court declines to extend it that far.

With regard to the demotion issue, the Court observes that the matter is referenced in Mr. Robinson's May 2004 charge to the EEOC.  However, as discussed above, this charge is untimely under *Morgan*.  Mr. Robinson argues that *Edelman* should permit the charge to relate back to an earlier filing date.  Mr. Robinson references the demotion in his 1998 correspondence with the EEOC.  However, the Court declines to relate the charge back to the filing date of the

correspondence under *Edelman* because there is no indication that the EEOC– or indeed, Mr.

Robinson– considered that correspondence to be a charge.

    *Edelman* expressly left open the possibility that relation back could be denied where

neither the claimant nor the EEOC considered the correspondence to be a charge.  535 U.S. at

119.  In an unpublished opinion, the Tenth Circuit also has recognized that possibility, finding

that an EEOC intake questionnaire did not support relation back because neither the EEOC nor

the claimant treated the questionnaire as if it were a charge.  *Persik v. Manpower, Inc.*, 85

Fed.Appx. 127, 131-32 (10th Cir. 2003) (unpublished).[5]  The few other District Courts to

address the issue have usually urged a restrictive interpretation of whether the initial filing should

be treated as a charge.  *See Hollon v. Louisiana Pacific Co.*, ___ F.Supp.2d ___, 2005 WL

1398711 (E.D. Tx. June 14, 2005) (slip copy); *Broadus v. Aegis Communication Group, Inc.*,

2002 WL 1371214 (N.D. Tx. 2002) (unpublished), *but see EEOC v. I-Sector Corp.*, 2003 WL

29939 (N.D. Tx. 2003) (deeming charge to relate back to letter from complainant).

    In determining whether to permit relation back, this Court focuses on several relevant

factors.  First, it is clear that the EEOC did not consider Mr. Robinson's correspondence to

constitute a charge, as there is no indication that the EEOC opened a case file, commenced an

---

[5]Pursuant to 10th Cir. R. 36.3(b), the Court cites *Persik* not for any precedential value, but because it helpfully addresses the issue of whether relation back under *Edelman* may be denied based on the parties' treatment of the earlier filing, a matter that has not been addressed in any published opinion from this Circuit.  Pursuant to Rule 36.3(c), a copy of *Persik* is attached hereto.

investigation, or otherwise took action in response to the letters.  *Compare Daum v. Staffing Network, L.L.C.*, 2002 WL 31572557 (N.D. Ill. 2002) (unpublished) ("Staffing Network has not pointed to any evidence to support that neither the EEOC or plaintiff treated her letter as a charge of discrimination.  To the contrary, the EEOC's response to Daum's letter indicates that the EEOC considered the letter a charge and told the plaintiff as much").

Second, the Court observes that, but for statements made in the context of this litigation, nothing in the record indicates that Mr. Robinson considered the correspondence to constitute a charge of discrimination.  For example, Mr. Robinson does not allege that he subsequently contacted the EEOC to determine the status of his "charge."  To the contrary, he followed his first letter in August 1998 with another letter in October 1998, containing much of the same information (some of it copied verbatim), and sent another copy of the October letter to the various recipients ten days later, presumably because no one had responded.  At some point in 2001, Mr. Robinson had discussions with an EEOC investigator and was told that a formal charge would be submitted to him for his signature; nothing in the record suggests that Mr. Robinson informed the EEOC that he believed his 1998 letters were still pending as charges. Thus, on the record before the Court, Mr. Robinson has not shown that he considered the letters to be charges.

Third, the Court observes that the particular circumstances of Mr. Robinson's correspondence make it inappropriate to be treated as a charge.  The letters are not addressed

specifically to the EEOC; in all instances, the EEOC is merely one of many entities copied on the letter. The content of the letters makes it clear that Mr. Robinson is not specifically asserting a claim of discrimination, but is primarily raising work-related grievances internally. *See e.g.* Docket # 73-3 ("I, Arthur Jerome Robinson, . . . would like to appeal the examination review results for the reallocation of my title."). Finally, the Court observes that these letters are quite remote in time compared to the formal charge for which relation back is sought.

In many ways, the facts of this case resemble those in the *Broadus* case. There, the plaintiff sent letters to the EEOC in 1995 and 1997, but failed to file a formal charge until 2001. 2002 WL 1371214 at * 2. None of the letters was specifically and directly addressed to the EEOC, and the letters addressed broad complaints of "nepotism, unfairness, and possibly discrimination." *Id.* The *Broadus* court further observed, as this Court does here, that there is no evidence that the EEOC actually received such letters.[6] *Id.* Under these circumstances, the *Broadus* court refused to permit relation back under *Edelman*. A similar result is warranted here. The correspondence by Mr. Robinson to the EEOC in 1998 is simply too remote in time, too oblique in subject-matter, and too uncertain in its manner of delivery to permit this Court to deem it to be a charge for which relation-back is appropriate.

---

[6]*Compare* Docket # 73-8 (2001 letter from Mr. Robinson to EEOC, containing EEOC "Received" stamp).

Accordingly, the only events in Mr. Robinson's discrimination claim for which he filed a timely charge are claims related to pay disparities and his transfer to CINS. Thus, these will be considered as the only events giving rise to the claim of discrimination.

### 3.    *Prima facie* case

The Defendant argues that Mr. Robinson cannot establish a genuine issue of fact as to his *prima facie* case for either the pay claim or transfer claim. Both claims are subject to the traditional *McDonnell-Douglas* burden-shifting framework. To prove a claim of discrimination under Title VII, Mr. Robinson must first establish a *prima facie* case that: (i) he is a member of a protected class; (ii) that he was qualified for the benefit or position he occupied; (iii) that he suffered an adverse employment action; and (iv) that such adverse action occurred in circumstances giving rise to an inference of discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir.2004); *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1416-17 (10th Cir.1993). If Mr. Robinson successfully carries this burden, then the Defendant must produce a legitimate, non-discriminatory reason for its actions, and Mr. Robinson must then prove that the proffered reason is pretextual. *Id.*

For the pay claim, the Defendant contends that Mr. Robinson cannot establish that there are similarly-situated white individuals who receive higher pay, and thus, cannot raise an inference of discrimination with regard to this claim. In response, Mr. Robinson contends that

22

he is similarly-situated to higher-paid white employees Phil Smith and Lynn Lickteig.  Mr.

Robinson does not refer to specific evidence in the record that demonstrates either that Smith and

Lickteig are similarly-situated to him; his assertion that these employees are similarly-situated to

him is nothing more than a conclusion.  In response, the Defendant has produced an affidavit of

Betsy Rodriguez, Vice Chancellor of Human Resources, which explains that Smith occupies a

position outside of the State Classified System, and thus, is not comparable to Mr. Robinson's

classified position, and that Lickteig is Laboratory Coordinator involved in the photography lab.

Mr. Robinson's conclusory assertion that he is similarly-situated to Smith is insufficient to

demonstrate a genuine issue of fact.  Under Fed. R. Civ. P. 56(e), a party faced with a motion for

summary judgment must come forward with specific facts demonstrating a genuine issue for trial.

Mr. Robinson's conclusory assertion that Smith is similarly-situated to him is insufficient to

overcome the Defendant's contention that Smith occupies a substantially-different exempt

professional position.

        The same can be said about Lickteig.  The Defendant has asserted that, since 1993,

Lickteig's position has been a Photographer, and that Mr. Robinson occpies a position as

Information Technician II.  Lickteig's duties involve "responsibility for providing professional

photography services . . . and overseeing and formally supervising a subordinate photographer[;]

takes portrais for all seniors in the Environmental Design program[; and] assists faculty in their

research and publications by taking photographs."  *Docket* # 77-4.  Mr. Robinson's response to

the Motion for Summary Judgment does not dispute these facts. Indeed, beyond the conclusory assertion that Lickteig "receive[s] higher pay than Robinson despite performing the same duties," Mr. Robinson does not come forward with facts to demonstrate that he and Lickteig are similarly-situated. Nothing in Mr. Robinson's assertions indicate that the photography tasks performed by Lickteig are in any way similar to the tasks that he performs as an Information Technician. Accordingly, Mr. Robinson has failed to demonstrate a genuine issue of fact as to whether there are similarly-situated white employees who receive higher pay, and the Defendant is entitled to summary judgment on this aspect of his discrimination claim.

With regard to his discriminatory transfer claim, the Defendant contends that Mr. Robinson cannot establish that the transfer constitutes an adverse employment action, or that it arose in circumstances giving rise to an inference of discrimination. In response, Mr. Robinson asserts that the transfer resulted in him being given much less job responsibility. A transfer with reduced job duties can constitute an adverse employment action. *Aquilino v. Univ. of Kansas*, 268 F3d 930, 934 (10th Cir. 2001). The Defendant also contends that Mr. Robinson cannot show that the transfer occurred in circumstances giving rise to an inference of discrimination. Mr. Robinson contends that some of his former functions were given to a white male. The replacement of an employee by another person outside the protected class is one means of satisfying this element. *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1228-29 & n. 8 (10th Cir. 2000). In response, the Defendant points to a portion of Mr. Robinson's

24

deposition in which he appears to concede that some of his former functions are performed by employees other than this white male.  However, this evidence merely raises a question of fact as to whether a substantial amount of Mr. Robinson's former duties were assigned to a white male after his transfer.  Accordingly, the Defendant is not entitled to summary judgment on this claim.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Defendant's Motion to Dismiss **(# 37)** is **GRANTED IN PART**, insofar as Mr. Robinson's Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action are **DISMISSED** and **DENIED IN PART**, insofar as the Court declines to dismiss his Second Cause of Action, sounding in Title VII retaliation.  The Defendant's Motion for Summary Judgment **(# 67)** is **GRANTED IN PART**, insofar as the Defendant is entitled to summary judgment on Mr. Robinson's retaliation claim in its entirety and on his Title VII discrimination claim insofar as it relates to conduct other his transfer out of the College of

Architecture, and **DENIED IN PART**, insofar as a triable issue of fact remains with regard to the

discrimination claim based on the transfer.

Dated this 19th day of September, 2005

BY THE COURT:

Marcia S. Krieger
United States District Judge

WestLaw.

85 Fed.Appx. 127                                                         Page 1
85 Fed.Appx. 127
**(Cite as: 85 Fed.Appx. 127)**

**H**

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,
Tenth Circuit.
Raymond Charles PERSIK,
Plaintiff-Appellant,
v.
MANPOWER INC., Defendant-Appellee.
**No. 03-1116.**

Dec. 31, 2003.

**Background:** Employee, who worked for corporation that provided temporary labor on contract basis to other employers, brought suit against the corporation, as his employer, alleging that employer unlawfully discriminated against him based on his sex, religion, and his "Religious/Political Pro Life

view." The United States District Court for the District of Colorado dismissed complaint for failure to state a claim on which relief could be granted, and employee appealed.

**Holdings:** The Court of Appeals, Baldock, Circuit Judge, held that:

(1) limitations period for filing Equal Employment Opportunity Commission (EEOC) charge of religious discrimination began running when employee was first notified of termination decision;

(2) mere fact that employee continued working for employer at other branches did not extend time to file EEOC charge;

(3) letter from corporate headquarters, indicating that employer stood by decision reached by branch office to terminate his employment, was not a new act of discrimination that start clock running on time to file charge; and

(4) date of EEOC questionnaire would not be used to calculate limitations period.
Affirmed.

West Headnotes

**[1] Federal Civil Procedure** ⬢━1825
170Ak1825 Most Cited Cases
When pro se plaintiff fails to comply with local rules requiring response to motion to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

85 Fed.Appx. 127                                                                                    Page 2
85 Fed.Appx. 127
**(Cite as: 85 Fed.Appx. 127)**

dismiss complaint, federal district court may not grant motion to dismiss for failure to state claim on which relief can be granted based solely on plaintiff's failure to respond, but instead, federal district court must still examine allegations in plaintiff's complaint and determine whether plaintiff has stated claim upon which relief can be granted. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[2] Civil Rights ☜━1505(3)**
78k1505(3) Most Cited Cases
Limitations period for filing Equal Employment Opportunity Commission (EEOC) charge of religious discrimination began running when employee was first notified of termination decision. Civil Rights Act of 1964, § 706(e)(1), as amended, 42 U.S.C.A. § 2000e-5(e)(1).

**[3] Civil Rights ☜━1505(3)**
78k1505(3) Most Cited Cases

**[3] Civil Rights ☜━1505(7)**
78k1505(7) Most Cited Cases
Acts.
Mere fact that employee continued working for employer at other branches of employer's temporary labor business, after employee was terminated at one branch, did not extend employee's time to file Equal Employment Opportunity Commission (EEOC) charge of

religious discrimination. Civil Rights Act of 1964, § 706(e)(1), as amended, 42 U.S.C.A. § 2000e-5(e)(1).

**[4] Civil Rights ☜━1505(3)**
78k1505(3) Most Cited Cases
Letter sent to employee from employer's corporate headquarters, indicating that employer stood by decision reached by branch office to terminate his employment, was not a new act of discrimination that start clock running on time to file Equal Employment Opportunity Commission (EEOC) charge of religious discrimination, despite employee's assertion that, unlike employer's earlier termination decision, letter cut off his opportunities to obtain assignments from all of employer's ranches, where nothing in letter stated that employee could not seek employment in other locations besides the one branch. Civil Rights Act of 1964, § 706(e)(1), as amended, 42 U.S.C.A. § 2000e-5(e)(1).

**[5] Civil Rights ☜━1505(3)**
78k1505(3) Most Cited Cases
Date of employee's Equal Employment Opportunity Commission (EEOC) questionnaire, rather than the EEOC charge, would not be used to calculate limitations period for filing EEOC charge, where questionnaire warned employee, in two different places, in capital letters, that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

85 Fed.Appx. 127                                    Page 3
85 Fed.Appx. 127
**(Cite as: 85 Fed.Appx. 127)**


"COMPLETING THIS QUESTIONNAIRE DOES NOT CONSTITUTE THE FILING OF A CHARGE," and employee's correspondence with the EEOC indicated that he did not believe that the questionnaire he had previously completed was intended to operate as a charge. Civil Rights Act of 1964, § 706(e)(1), as amended, 42 U.S.C.A. § 2000e-5(e)(1).

 **\*128** Raymond Charles Persik, pro se, Dublin, CA, for Plaintiff-Appellant.


 Christy E. Phanthavong, Michael R. Phillips, Joel H. Spitz, Ross & Hardies, Chicago, IL, Andrew David Ringel, Hall & Evans, Denver, CO, for Defendant-Appellee.

 Before O'BRIEN and BALDOCK, Circuit Judges, and BRORBY, Senior Circuit Judge.


### ORDER AND JUDGMENT [FN\*]

 FN\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

 BALDOCK, Circuit Judge.

 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this **\*129** appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

 Raymond Charles Persik appeals from the district court's dismissal of his employment discrimination complaint, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. We affirm.

### FACTS

 In his complaint, Persik alleges that the defendant, Manpower Inc. (Manpower), unlawfully discriminated against him based on his sex, religion, and his "Religious/Political Pro Life view." R., Doc. 1 at 2. Manpower is a temporary agency that places employees with employers who contract for temporary labor. It employed Persik as a temporary employee.

 Persik asserts that the first incident of discrimination occurred on March 27, 2000, during a job assignment arranged by the Manpower office in Boulder, Colorado. He alleges that a Manpower representative

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

85 Fed.Appx. 127                                                      Page 4
85 Fed.Appx. 127
**(Cite as: 85 Fed.Appx. 127)**

contacted him and asked if he was experiencing emotional problems. R., Doc. 1 at 3. On April 24, 2000, Persik was prematurely released from a Manpower assignment through the Boulder office at the University of Colorado. He alleges that this termination occurred due to discrimination rather than the reason given, his failure to follow directions.

Persik claims he was unable to obtain employment through Manpower during the summer of 2000. *Id.,* Attach. 1 at 1 (Charge of Discrimination). Apparently, he is referring only to the Boulder branch office, for on July 5, 2000, Persik states he again worked for Manpower at an assignment arranged by the Louisville, Colorado branch office and "had an excellent assignment." *Id.* at 2. In December 2000, Persik also worked out of the Manpower office in Carlisle, Pennsylvania. He alleges no discriminatory incident in this assignment. The last incident of discrimination purportedly took place on July 27, 2001, when Persik received a letter from Manpower's corporate headquarters, indicating that it stood by the decision reached by the Boulder branch office in April 24, 2000 to terminate his employment. *Id.* [FN1]

> FN1. Persik also alleges retaliation by "an unknown party" on December 22,

2000. R., Doc. 1 at 5. Not only is this alleged incident outside the 300-day window, it fails to state a claim for relief because there is no indication in the complaint that this unknown party had anything to do with Manpower.

Persik filed a charge of discrimination complaining of these practices with the Equal Employment Opportunity Commission (EEOC) on January 22, 2002. *Id.* at 2. The district court dismissed Persik's complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), because his complaint showed that his EEOC charge had not been timely filed. A Title VII plaintiff must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). A claim is time-barred if the charge is not filed within this time limit. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Discrete discriminatory acts, such as those Persik alleges here, "occur" on the day they "happen." *Id.* at 110. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.

The only alleged act of discrimination that occurred within 300 days of the date on which Persik filed his EEOC charge was the July 27,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

85 Fed.Appx. 127                                                                              Page 5
85 Fed.Appx. 127
**(Cite as: 85 Fed.Appx. 127)**

2001 letter from Manpower's headquarters. The district court concluded that this letter merely ratified Persik's **\*130** earlier termination, and therefore did not re-start the 300-day clock.

### STANDARD OF REVIEW

We review the district court's dismissal de novo. *Oxendine v. Kaplan,* 241 F.3d 1272, 1275 (10th Cir.2001). We construe the allegations of Persik's pro se complaint liberally, upholding the dismissal only if it is obvious that he cannot prevail on the facts as alleged and that it would be futile to allow him to amend his complaint. *Id.*

Persik's pro se complaint was submitted on a standard form and contains very few supporting factual allegations or details. He attached a large number of documents as exhibits to his complaint, however, which spell out the nature of the alleged discriminatory incidents. These became part of the complaint for purposes of the district court's determination of Manpower's motion to dismiss, *see id.,* and consequently are included in our review of the order of dismissal.

### ANALYSIS

[1] Our review is complicated by the fact that Persik did not file a response to Manpower's motion to dismiss. The district court noted Persik's failure to respond, and after analyzing the timeliness issue, deemed Persik's lack of response a concession of Manpower's arguments. R., Doc. 15 at 4. We recently outlined the procedures to be followed when a pro se litigant fails to comply with local rules requiring a response to a motion to dismiss his complaint. *Issa v. Comp USA,* 354 F.3d 1174, No. 03-4024, 2003 WL 23010402 (10th Cir. Dec. 24, 2003). A district court may not grant a 12(b)(6) dismissal based solely on the plaintiff's failure to respond. *Id.* at 1177-78, slip op. at 5. Instead, it "must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Id.* at 1177-78, 5-6.

[2] We are satisfied that the district court's order in this case satisfies these procedural requirements. Prior to deeming Persik's lack of response a concession of Manpower's motion to dismiss, the district court stated the following conclusions concerning the issues raised in the motion:

Plaintiff learned of his termination on or before April 24, 2000. He failed to file a charge with the EEOC within three hundred days of this date. The July 26, 2001 letter informing plaintiff that Manpower would not reverse its April 24, 2000 decision to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

85 Fed.Appx. 127                                                                          Page 6
85 Fed.Appx. 127
**(Cite as: 85 Fed.Appx. 127)**

terminate him did not constitute a fresh act of discrimination for purposes of the EEOC filing.
R., Doc. 15 at 4.

The district court sufficiently analyzed the reasons that Persik's complaint fails to state a claim. Upon de novo review, we further conclude that the district court's analysis of the timeliness issue was correct. The limitations period for filing an EEOC charge begins running when the employee is notified of the employment decision. *Del. State Coll. v. Ricks,* 449 U.S. 250, 259, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). "[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Id.* at 261. Persik, however, raises three arguments designed to show that different dates apply to the start of the 300 day period, or to the date his charge was filed.

1. **Effect of March 22, 2001 conversation**

In his complaint, Persik admits that he was dismissed on April 24, 2000. He claims, however, that he did not have notice of two essential facts until much later: **\*131** (1) that the dismissal had been effectuated by *Manpower* (rather than the University of Colorado); and (2) that the dismissal meant the Boulder, Colorado Manpower office would no longer consider him for temporary assignments at *other* job sites. He claims he was not aware of these facts until he spoke with a staffing specialist in the Boulder Manpower office, on March 22, 2001. *See* R., Doc. 1, Attach. 1 at 1 (Charge of Discrimination) ("On or about March 22, 2001, I was told by one of the [Manpower] Staffing Specialists that the company had intended to release me on April 24, 2000.").

There is no indication that Persik was unaware of the essential facts surrounding his claim at the time he was released from employment in April 2000. Even if we were to use this March 22, 2001 conversation as the notification date, however, it also was outside the 300 day window and Persik's charge was still untimely. We therefore reject this argument.

2. **Effect of July 26, 2001 letter**

[3] Persik contends that the July 26, 2001 letter he received from Manpower's corporate headquarters should be used as the final date of discrimination. He argues that the April 2000 decision was not final because he was permitted to accept assignments from Manpower branches in other locations between his April 2000 termination and the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

85 Fed.Appx. 127                                                                                          Page 7
85 Fed.Appx. 127
**(Cite as: 85 Fed.Appx. 127)**

time the July 2001 letter was issued. Aplt. Opening Br. at 17. The mere fact that Persik continued working for Manpower at other branches, however, did not extend his time to file a charge. "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks,* 449 U.S. at 257.

[4] Nor can we accept Persik's argument that Manpower's letter of July 26, 2001 was a new act of discrimination because, unlike the earlier decision, it cut off his opportunities to obtain assignments from *all* branches of Manpower. Nothing in the July 26, 2001 letter states that Persik may not seek employment with Manpower in other locations besides the Boulder branch. Persik's complaint itself does not allege that the letter prevented him from seeking employment with other branches of Manpower. Persik's letter to Manpower dated July 3, 2001, which prompted the letter of July 26, 2001, is addressed solely to a supervisor at the Boulder branch, and refers to resolution of "employment discrimination that occurred through *your office* of [Manpower]." R., Doc. 1, Attach. 15 at 1 (Letter of July 3, 2001) (emphasis added). Persik further stated in this letter that he believed it was not necessary to provide him with a letter of

permission to work at other Manpower offices in the future. *Id.* at 3.

3. **Effect of EEOC questionnaire**

[5] Finally, Persik argues that we should use the date of his EEOC questionnaire, rather than the EEOC charge, to calculate the 300-day period, because he eventually filed a proper charge. If the date of the questionnaire were used as the filing date, Persik's EEOC filing would be timely. A defective charge filed during the 300-day period may be amended outside the period to cure technical defects or omissions. *See* 29 C.F.R. § 1601.12(b); *Edelman v. Lynchburg Coll.,* 535 U.S. 106, 109, 110 n. 2, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002). This relation-back principle, however, applies only where the earlier filing actually operates as a charge. *Cf. id.* at 118-19 (reserving issue of whether plaintiff and EEOC intended letter filed within 300-day period to be treated as charge).

Here, the questionnaire warned Persik, in two different places, in capital letters, **\*132** that "COMPLETING THIS QUESTIONNAIRE DOES NOT CONSTITUTE THE FILING OF A CHARGE." R., Doc. 1, Attach. 3 at 1, 7. Persik's March 2, 2001 correspondence with the EEOC indicates that he did not believe that the questionnaire he had

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

85 Fed.Appx. 127                                                                                                Page 8
85 Fed.Appx. 127
**(Cite as: 85 Fed.Appx. 127)**

previously completed was intended to operate as a charge. *Id.,* Attach. 6 (letter of March 2, 2001). He reaffirms this position in his reply brief on appeal. Aplt. Reply Br. at 8. Under the circumstances, the charge he eventually filed did not relate back to the date of the questionnaire.

CONCLUSION

 The district court correctly concluded in this case that Persik did not file an EEOC charge within 300 days of the last discrete act of discrimination alleged in his complaint. It therefore properly dismissed his complaint for failure to state a claim. The judgment of the district court is AFFIRMED.

 85 Fed.Appx. 127

**Briefs and Other Related Documents
(Back to top)**

• 2003 WL 23700726 (Appellate Brief) Appellant's Reply Brief (Jul. 09, 2003)Original Image of this Document (PDF)

• 2003 WL 23700727 (Appellate Brief) Answer Brief of the Defendant-Appellee (Jun. 20, 2003)Original Image of this Document (PDF)

• 2003 WL 23700728 (Appellate Brief) Appellant's Opening Brief (May. 09, 2003)Original Image of this Document with Appendix (PDF)

• 03-1116 (Docket)

(Mar. 26, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.